MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X
NOEMI RUIZ ORTEGA, ADRIAN D.
VELASQUEZ, and JUAN DOMINGO
VELASQUEZ ROSALES, *individually and on
behalf of others similarly situated,*

*Plaintiffs*,

-against-

AMBROSIA BAKERY CAFE INC. (D/B/A
BREAD FACTORY), 935 8TH AVENUE
BAKERY CORP. (D/B/A BREAD
FACTORY), 935 EIGHTH AVENUE LLC
(D/B/A BREAD FACTORY), FRANK
HALKIADAKIS, NIKOLAOS GLENOIS,
MIKO SOMARAKIS (A.K.A NICHOLAS
SOMALAKIS), NICK TETENES, and
DIMITRIOS (A.K.A. JIMMY) RAPTIS,

*Defendants.*

------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

**ECF Case**

Plaintiffs Noemi Ruiz Ortega, Adrian D. Velasquez, and Juan Domingo Velasquez

Rosales , individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and

through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and

as against Ambrosia Bakery Cafe Inc. (d/b/a Bread Factory), 935 8th Avenue Bakery Corp. (d/b/a

Bread Factory), 935 Eighth Avenue LLC (d/b/a Bread Factory), ("Defendant Corporations"),

Frank Halkiadakis, Nikolaos Glenois, Miko Somarakis (a.k.a Nicholas Somalakis), Nick Tetenes,

and Dimitrios (a.k.a. Jimmy) Raptis ("Individual Defendants") (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are both current and former employees of Defendants Ambrosia Bakery Cafe Inc. (d/b/a Bread Factory), 935 8th Avenue Bakery Corp. (d/b/a Bread Factory), 935 Eighth Avenue LLC (d/b/a Bread Factory), Frank Halkiadakis, Nikolaos Glenois, Miko Somarakis (a.k.a Nicholas Somalakis), Nick Tetenes, and Dimitrios (a.k.a. Jimmy) Raptis.

2.       Defendants own, operate, or control a bakery and cafe, located at 935 8th Avenue, New York, NY 10019 under the name "The Bread Factory Cafe."

3.      Upon information and belief, individual Defendants Frank Halkiadakis, Nikolaos Glenois, Miko Somarakis (a.k.a Nicholas Somalakis), Nick Tetenes, and Dimitrios (a.k.a. Jimmy) Raptis, serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the Bakery/cafe as a joint or unified enterprise.

4.      Plaintiffs are former employees of Defendants.

5.      Plaintiffs were employed as a cashier, a bread maker, and a dishwasher/delivery worker at the bakery/cafe located at 935 8th Avenue, New York, NY 10019.

6.      Plaintiff Rosales was ostensibly employed as a dishwasher and a delivery worker. However, he was required to spend a considerable part of their work day performing non-tipped duties, including but not limited to sweeping and mopping the front, the back and the basement, cleaning the tables, washing the dishes, packing the deliveries, stocking items outside, getting change from the bank, cleaning windows, bathrooms, bringing grown inventory from trucks and accommodating them in the basement, organizing the basement, twisting and tying up cardboard

boxes, taking out the trash, bringing up sodas from basement and stocking the refrigerator (hereafter the "non-tipped duties").

7. At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

8. Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

9. Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

10. Defendants employed and accounted for Plaintiff Rosales as a delivery worker in their payroll, but in actuality his duties required a significant amount of time spent performing non-tipped duties alleged above.

11. Regardless, at all relevant times, Defendants paid Plaintiff Rosales at a rate that is lower than, or at the required tip-credit rate.

12. However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiff Rosales' non-tipped duties have exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

13. Upon information and belief, Defendants employed the policy and practice of disguising Plaintiff Rosales's actual duties in payroll records by designating him as a delivery worker instead of non-tipped employee. This allowed Defendants to avoid paying Plaintiff Rosales at the minimum wage rate and enabled them to pay them at the tip-credit rate (which they still failed to do, at times).

14.    In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiff Rosales's and other tipped employees' tips and made unlawful deductions from Plaintiff Rosales's and other tipped employees' wages.

15.    Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

16.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

17.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

18.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

20.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a bakery and cafe located in this district.  Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

### Plaintiffs

21.    Plaintiff Noemi Ruiz Ortega ("Plaintiff Ruiz" or "Ms. Ruiz") is an adult individual residing in Hudson County, New Jersey. Plaintiff Ruiz was employed by Defendants at The Bread Factory Cafe from approximately 2003 until on or about October 12, 2016.

22.    Plaintiff Adrian D. Velasquez ("Plaintiff Velasquez" or "Mr. Velasquez") is an adult individual residing in Kings County, New York. Plaintiff Velasquez was employed by Defendants at The Bread Factory Cafe from approximately September 2005 until on or about March 11, 2018.

23.    Plaintiff Juan Domingo Velasquez Rosales ("Plaintiff Rosales" or "Mr. Rosales") is an adult individual residing in Bronx County, New York. Plaintiff Rosales was employed by Defendants at The Bread Factory Cafe from approximately August 2009 until on or about November 14, 2017.

### Defendants

24.    At all relevant times, Defendants owned, operated or controlled a bakery and cafe, located at 935 8th Avenue, New York, NY 10019 under the name "The Bread Factory Cafe."

25.    Upon information and belief, Ambrosia Bakery Cafe Inc. (d/b/a Bread Factory) is a domestic corporation organized and existing under the laws of the State of New York. Upon

information and belief, it maintains its principal place of business at 935 8th Avenue, New York, NY 10019.

26.     Upon information and belief, 935 8th Avenue Bakery Corp. (d/b/a Bread Factory) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 935 8th Avenue, New York, NY 10019.

27.     Upon information and belief, 935 Eighth Avenue LLC (d/b/a Bread Factory) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 935 8th Avenue, New York, NY 10019.

28.     Defendant Frank Halkiadakis is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Frank Halkiadakis is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Frank Halkiadakis possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

29.     Defendant Nikolaos Glenois is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Nikolaos Glenois is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Nikolaos Glenois possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He

determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

30.     Defendant Miko Somarakis (a.k.a Nicholas Somalakis) is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Miko Somarakis (a.k.a Nicholas Somalakis) is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Miko Somarakis (a.k.a Nicholas Somalakis) possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

31.     Defendant Nick Tetenes is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Nick Tetenes is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Nick Tetenes possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

32.     Defendant Dimitrios (a.k.a. Jimmy) Raptis is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Dimitrios (a.k.a. Jimmy) Raptis is sued individually in his capacity as owner, officer and/or agent of Defendant

Corporations. Defendant Dimitrios (a.k.a. Jimmy) Raptis possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## **FACTUAL ALLEGATIONS**

*Defendants Constitute Joint Employers*

33.    Defendants operate a bakery and cafe located in the Hell's Kitchen section of Manhattan in New York City.

34.    Individual Defendants, Frank Halkiadakis, Nikolaos Glenois, Miko Somarakis (a.k.a Nicholas Somalakis), Nick Tetenes, and Dimitrios (a.k.a. Jimmy) Raptis, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, and control significant functions of Defendant Corporations.

35.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

36.    Each Defendant possesses substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

37.    Defendants jointly employ Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

38.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

39.     Upon information and belief, Individual Defendants Frank Halkiadakis, Nikolaos Glenois, Miko Somarakis (a.k.a Nicholas Somalakis), Nick Tetenes, and Dimitrios (a.k.a. Jimmy) Raptis, operate Defendant Corporations as either alter egos of themselves and/or fail to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

   a)   failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

   b)   defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

   c)   transferring assets and debts freely as between all Defendants,

   d)   operating Defendant Corporations for their own benefit as the sole or majority shareholders,

   e)   operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

   f)   intermingling assets and debts of their own with Defendant Corporations,

   g)   diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

   h)   Other actions evincing a failure to adhere to the corporate form.

40.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

41.     In each year from 2012 to 2018, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

42.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that are used in the bakery/cafe on a daily basis are goods produced outside of the State of New York.

### Individual Plaintiffs

43.     Plaintiffs are former employees of Defendants who were employed as a cashier, a bread maker and a dishwasher/delivery worker.

44.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

### Plaintiff Noemi Ruiz Ortega

45.     Plaintiff Ruiz was employed by Defendants from approximately 2003 until on or about October 12, 2016.

46.     Defendants employed Plaintiff Ruiz as a cashier.

47.     Plaintiff Ruiz regularly handled goods in interstate commerce, such as Bakery/cafe and other supplies produced outside the State of New York.

48.     Plaintiff Ruiz's work duties required neither discretion nor independent judgment.

49.     Throughout her employment with Defendants, Plaintiff Ruiz regularly worked in excess of 40 hours per week.

50.     From approximately July 2012 until on or about September 2012, Plaintiff Ruiz worked as a cashier 4 hours per day, Mondays through Fridays (typically 20 hours per week).

51.     From approximately March 2013 until on or about October 2014 and then from approximately June 2015 until on or about October 12, 2016, Plaintiff Ruiz worked as a cashier from approximately 2:00 p.m. until on or about 9:00 p.m., Tuesdays through Fridays, from approximately 7:00 a.m. until on or about 7:00 p.m., Saturdays, and from approximately 7:00 a.m. until on or about 4:00 p.m., Sundays (typically 49 hours per week).

52.     Throughout her employment, Defendants paid Plaintiff Ruiz her wages in a combination of check and cash.

53.     From approximately July 2012 until on or about October 12, 2016, Defendants paid Plaintiff Ruiz $9.00 per regular and overtime hour.

54.     Plaintiff Ruiz's pay did not vary even when she was required to stay later or work a longer day than her usual schedule.

55.     For example, Defendants required Plaintiff Ruiz to work an additional 20 minutes past her scheduled departure time two days a week, and did not pay her for the additional time she worked.

56.     Although defendants granted Plaintiff Ruiz a 30 minute meal break, she repeatedly was required to work through the break; Defendants, still deducted the break periods she missed from her paycheck.

57.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Ruiz regarding overtime and wages under the FLSA and NYLL.

58.     Defendants did not provide Plaintiff Ruiz an accurate statement of wages, as required by NYLL 195(3).

59.     In fact, Defendants adjusted Plaintiff Ruiz's paystubs so that they reflected inaccurate wages and hours worked.

60.     Defendants did not give any notice to Plaintiff Ruiz, in English and in Spanish (Plaintiff Ruiz's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

61.     Defendants required Plaintiff Ruiz to purchase "tools of the trade" with her own funds—including uniforms.

*Plaintiff Adrian D. Velasquez*

62.     Plaintiff Velasquez was employed by Defendants from approximately September 2005 until on or about March 11, 2018.

63.     Defendants employed Plaintiff Velasquez as a bread maker.

64.     Plaintiff Velasquez has regularly handled goods in interstate commerce, such as Bakery/cafe and other supplies produced outside the State of New York.

65.     Plaintiff Velasquez's work duties required neither discretion nor independent judgment.

66.     Throughout his employment with Defendants, Plaintiff Velasquez has regularly worked in excess of 40 hours per week.

67.     From approximately February 2012 until on or about December 2012, Plaintiff Velasquez worked as a bread maker  from approximately 6:00 a.m. until on or about 4:00 p.m., Wednesdays through Mondays (typically 60 hours per week).

68.     From approximately February 2013 until on or about December 2017, Plaintiff Velasquez worked as a bread maker  from approximately 8:00 a.m. to 9:00 a.m. until on or about 7:00 p.m. to 8:00 p.m., Wednesdays through Mondays (typically 60 to 72 hours per week).

69.     From approximately January 2018 until on or about March 11, 2018, Plaintiff Velasquez has worked as a bread maker from approximately 8:00 a.m. to 9:00 a.m. or 10:00 a.m.

until on or about 8:00 p.m. to 9:00 p.m., Wednesdays through Mondays (typically 66 to 78 hours per week).

70.     Throughout his employment, Defendants paid Plaintiff Velasquez his wages in a combination of check and cash.

71.     From approximately February 2012 until on or about December 2013, Defendants paid Plaintiff Velasquez a fixed salary of $500 per week.

72.     From approximately February 2013 until on or about December 2016, Defendants paid Plaintiff Velasquez a fixed salary of $685 per week ($180 by check, $460 in cash and $45 taken in taxes).

73.     From approximately January 2017 until December 2017, Defendants paid Plaintiff Velasquez a fixed salary of $687 per week ($220 by check, $412 in cash, and $55 taken in taxes).

74.     From approximately January 2018 until on or about March 11, 2018, Defendants paid Plaintiff Velasquez a fixed salary of $687 per week ($260 by check, $362 in cash and $65 taken in taxes).

75.     Defendants never granted Plaintiff Velasquez any breaks or meal periods of any kind.

76.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Velasquez regarding overtime and wages under the FLSA and NYLL.

77.     Defendants never provided Plaintiff Velasquez an accurate statement of wages, as required by NYLL 195(3).

78.     In fact, Defendants adjusted Plaintiff Velasquez's paystubs so that they reflected inaccurate wages and hours worked.

79.     Defendants never gave any notice to Plaintiff Velasquez, in English and in Spanish (Plaintiff Velasquez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

80.     Defendants required Plaintiff Velasquez to purchase "tools of the trade" with his own funds—including two polo shirts.

*Plaintiff Juan Domingo Velasquez Rosales*

81.     Plaintiff Rosales was employed by Defendants from approximately August 2009 until on or about November 14, 2017.

82.     Defendants ostensibly employed Plaintiff Rosales as a dishwasher and a delivery worker.

83.     However, Plaintiff Rosales was also required to spend a significant portion of his work day performing the non-tipped duties described above.

84.     Although Plaintiff Rosales ostensibly was employed as a dishwasher and a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

85.     Plaintiff Rosales regularly handled goods in interstate commerce, such as Bakery/cafe and other supplies produced outside the State of New York.

86.     Plaintiff Rosales's work duties required neither discretion nor independent judgment.

87.     Throughout his employment with Defendants, Plaintiff Rosales regularly worked in excess of 40 hours per week.

88.     From approximately February 2012 until on or about December 2016, Plaintiff Rosales worked as a dishwasher and a delivery worker from approximately 10:00 a.m. until on or about 8:15 p.m., Mondays through Saturdays (typically 61.5 hours per week).

89.    From approximately January 2017 until on or about February 2017, Plaintiff Rosales worked as a dishwasher and a delivery worker from approximately 10:00 a.m. until on or about 6:15 p.m., Mondays through Fridays (typically 41.25 hours per week).

90.    From approximately March 2017 until on or about November 14, 2017, Plaintiff Rosales worked as a dishwasher and a delivery worker from approximately 10:00 a.m. until on or about 7:15 p.m., Mondays through Fridays (typically 46.25 hours per week).

91.    Throughout his employment, Defendants paid Plaintiff Rosales his wages in cash.

92.    From approximately February 2012 until on or about December 2015, Defendants paid Plaintiff Rosales a fixed salary of $350 per week.

93.    From approximately January 2016 until on or about December 2016, Defendants paid Plaintiff Rosales a fixed salary of $380 per week.

94.    From approximately January 2017 until on or about November 14, 2017, Defendants paid Plaintiff Rosales a fixed salary of $400 per week.

95.    Plaintiff Rosales' pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

96.    For example, Defendants required Plaintiff Rosales to work an additional 15 minutes past his scheduled departure time every day, and did not pay him for the additional time he worked.

97.    Although defendants granted Plaintiff Rosales a 20 to 30 minute meal break, he rarely was able to take it.

98.    Plaintiff Rosales was never notified by Defendants that his tips were being included as an offset for wages.

99.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Rosales' wages.

100.    Defendants withheld a portion of Plaintiff Rosales' tips; specifically, Defendants pocketed fifteen per cent of Seamless, GrubHub and all online orders.

101.    Prior to 2014, Plaintiff Rosales was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

102.    Defendants required Plaintiff Rosales to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

103.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Rosales regarding overtime and wages under the FLSA and NYLL.

104.    Defendants did not provide Plaintiff Rosales an accurate statement of wages, as required by NYLL 195(3).

105.    In fact, Defendants adjusted Plaintiff Rosales' paystubs so that they reflected inaccurate wages and hours worked.

106.    Defendants did not give any notice to Plaintiff Rosales, in English and in Spanish (Plaintiff Rosales' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

107.    Defendants required Plaintiff Rosales  to purchase "tools of the trade" with his own funds—including ten bicycles, one helmet, eight locks, one bag for deliveries, twenty sets of lights and bicycles' maintenance and repair.

*Defendants' General Employment Practices*

108.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week

without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

109.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked...

110.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulting in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

111.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

112.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

113.    Defendants' time keeping system did not reflect the actual hours that Plaintiffs worked.

114.    Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in order to release their wages.

115.    Defendants required Plaintiff Rosales and all delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers. These Plaintiffs and all similarly situated employees, were ostensibly employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing non-tipped duties.

116.    Plaintiff Rosales and all other tipped workers were paid at a rate that was, at times, below the tip-credit rate.

117.    However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and Plaintiff Rosales' non-tipped duties exceed 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

118.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she was assigned to work in an occupation in which tips were not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

119.    The delivery workers' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general Bakery/cafe work with duties, including the non-tipped duties described above.

120.    In violation of federal and state law as codified above, Defendants classified Plaintiff Rosales and other tipped workers as tipped employees, and paid them at a rate that is below or at the tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

121.    Defendants failed to inform Plaintiff Rosales, who received tips that Defendants intended to take a deduction against Plaintiff Rosales's earned wages for tip income, as required by the NYLL before any deduction may be taken.

122.    Defendants failed to inform Plaintiff Rosales who received tips, that his tips were being credited towards the payment of the minimum wage.

123.     Defendants failed to maintain a record of tips earned by Plaintiff Rosales who worked as a delivery worker for the tips he received.

124.     As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs who received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving delivery workers of a portion of the tips earned during the course of employment.

125.     Defendants unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

126.     Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

127.     Plaintiffs were paid their wages either in cash or in a combination of check and cash.

128.     Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

129.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

130.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

131.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

132.    Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

133.    Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

134.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

135.     At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and were subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records required by the FLSA.

136.     The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

137.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

138.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

139.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

140.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

141.     In violation of 29 U.S.C. § 206(a), Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate.

142.     Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate is willful within the meaning of 29 U.S.C. § 255(a).

143.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

144.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

145.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

146.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation is willful within the meaning of 29 U.S.C. § 255(a).

147.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

148.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

149.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

150.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

151.    Defendants' failure to pay Plaintiffs the minimum wage is willful within the meaning of N.Y. Lab. Law § 663.

152.    Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

153.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

154.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

155.    Defendants' failure to pay Plaintiffs overtime compensation is willful within the meaning of N.Y. Lab. Law § 663.

156.    Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

## OF THE NEW YORK COMMISSIONER OF LABOR

157.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

158.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours has exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

159.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours is willful within the meaning of NYLL § 663.

160.    Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

**VIOLATION OF THE NOTICE AND RECORDKEEPING**

**REQUIREMENTS OF THE NEW YORK LABOR LAW**

161.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

162.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

163.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

**SEVENTH CAUSE OF ACTION**

**VIOLATION OF THE WAGE STATEMENT PROVISIONS**

**OF THE NEW YORK LABOR LAW**

164.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

165.    With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

166.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

167.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

168.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL. 29 U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

169.    Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION

### OF THE NEW YORK LABOR LAW

170.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

171.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

172.    New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

173.    Defendants have unlawfully misappropriated a portion of Plaintiff Rosales's tips that were received from customers.

174.    Defendants have knowingly and intentionally retained a portion of Plaintiff Rosales' tips in violations of the NYLL and supporting Department of Labor Regulations.

175.    Plaintiff Rosales was damaged in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)    Declaring that Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violations of the provisions of the FLSA are willful as to Plaintiffs and the FLSA Class members;

(f)    Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)    Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount

equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants have violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)     Declaring that Defendants have violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)     Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(m)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(n)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(o)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(p)    Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(q)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(r)    All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
      March 12, 2018

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:    _____/s/ Michael Faillace_____
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 23, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    **Adrian D. Velasquez**

                                  Michael Faillace & Associates, P.C.
Legal Representative / Abogado:

Signature / Firma:

Date / Fecha:                     23 de enero de 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

December 12, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Juan Domingo  Velasquez Rosales

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      12 de diciembre

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 26, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    **Noemi Ruiz Ortega**

                                  Michael Faillace & Associates, P.C.

Legal Representative / Abogado:

                                  *Noemi Ruiz.*

Signature / Firma:

Date / Fecha:                     26 de enero de 2018

*Certified as a minority-owned business in the State of New York*